## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES JANOLEK Derivatively on Behalf of BEYOND MEAT, INC., <br><br> Plaintiff, <br><br> v. <br><br> DONALD THOMPSON, GREGORY BOHLEN, RAYMOND J. LANE, SETH GOLDMAN, BERNHARD VAN LENGERICH, NED SEGAL, DIANE CARHART, MARK J. NELSON, KATHY N. WALLER, ETHAN BROWN, and CHRISTOPHIS ISAAC "BIZ" STONE, <br><br> Defendants, <br><br> -and- <br><br> BEYOND MEAT, INC., a Delaware corporation, <br><br> Nominal Defendant. | C.A. No. |

## VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Plaintiff James Janolek ("Plaintiff"), by his attorneys, submits this Verified Stockholder Derivative Complaint for Violations of Securities Laws, Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment. Plaintiff alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff which are based on personal knowledge. This complaint is also based on the investigation of Plaintiff's counsel, which included, among other things, a review of public filings with the U.S. Securities and Exchange Commission ("SEC") and a review of news reports, press releases, and other publicly available sources.

## NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder derivative action brought by Plaintiff on behalf of Nominal

Defendant Beyond Meat, Inc. ("Beyond Meat" or the "Company") against members of its board of directors (the "Board") and members of upper management. The wrongdoing alleged herein has caused substantial damage to Beyond Meat's reputation, goodwill, and standing in the business community and has exposed Beyond Meat to substantial potential liability for violations of federal securities laws and the costs associated with defending itself. The violations of the law outlined herein have damaged Beyond Meat in the form of, among other things, millions of dollars in losses to the Company's market capitalization.

2.      Beyond Meat, manufactures revolutionary plant-based meat substitutes in the United States and internationally. The Company offers products including plant-based substitutes for beef, pork, and poultry in ready-to-cook and ready-to-heat formats. Beyond Meat sells its products through grocery, mass merchandiser, club and convenience store, and natural retailer channels, as well as direct to consumer and various food-away-from-home channels under Beyond Meat, Beyond Burger, Beyond Beef, Beyond Sausage, Beyond Breakfast Sausage, Beyond Chicken, Beyond Fried Chicken, Beyond Meatball, the Caped Steer Logo, GO BEYOND, Eat What You Love, The Cookout Classic, The Future of Protein, and The Future of Protein Beyond Meat brand names.  The company was formerly known as Savage River, Inc. ("Savage River") and changed its name to Beyond Meat, Inc. in September 2018. The Company was founded in 2009 and is headquartered in El Segundo, California.

3.      This complaint arises from the Board and upper management's misrepresentations and material omissions concerning the validity of claims made by its former exclusive manufacturer, Don Lee Farms ("Don Lee"), that Beyond Meat was unjustified in terminating its exclusive supply agreement for plant-based meat products with Don Lee. In reality, the Board and upper management were well aware of the substantial risks posed by terminating the agreement

with Don Lee just prior to its initial public offering ("IPO") and tried to ease investors' concerns about the effect of this termination by leaving material details about the Don Lee termination out of its public filings with the SEC. By timing the termination of the Don Lee Agreement to coincide approximately with the Company's IPO and withholding details regarding the risks associated with the termination, the Company's Board and upper management caused Beyond Meat stock to trade at an inflated price.

4.      This is a shareholder derivative action that seeks to remedy wrongdoing committed by Beyond Meat's directors and officers from the time the Company began trading on the NASDAQ Stock Exchange ("NASDAQ") on May 2, 2019 through January 27, 2020 (the "Relevant Period").

5.      In 2014, Beyond Meat, then known as Savage River, entered into a written exclusive supply agreement ("the Don Lee Agreement") with Don Lee, a long-time manufacturer of plant-based and vegan protein products. Under the terms of the Don Lee Agreement, Don Lee would produce and ship to Beyond Meet all the food products the Company required.

6.      On May 23, 2017, Beyond Meat terminated the Don Lee Agreement and began moving its commitments for supply to other manufacturers. On May 25, 2017, Don Lee filed a lawsuit against Beyond Meat in the Superior Court of the State of California for the County of Los Angeles alleging breach of contract, misappropriation of trade secrets, and unfair competition, captioned *Don Lee Farms v. Savage River, Inc.*, Case No. BC662838 (Cal. Super. Ct.) (the "Don Lee Lawsuit"). The Don Lee Lawsuit later included additional fraud claims, including that during the period in which Don Lee and the Company were in a business relationship, Don Lee had raised concerns over the Company's food safety protocols and that Beyond Meat's food safety inspector's report was changed to omit significant details concerning the safety of the Company's facilities.

7.      In May 2019, while the Don Lee Lawsuit was ongoing, Beyond Meat completed its IPO.

8.      Throughout the Relevant Period, the Individual Defendants were responsible for allowing Beyond Meat to make statements in its SEC filings denying the validity of Don Lee's claims and asserting that Beyond Meat was justified in terminating the Don Lee Agreement. In reality, Don Lee's claims, including that Beyond Meat unlawfully terminated the Don Lee Agreement, were strong. The Individual Defendants knew or should have known that terminating its exclusive supply agreement with its major manufacturer could expose the company to major liability (not frivolous claims). However the Individual Defendants deliberately and timely assured investors these claims had no merit.

9.      On January 27, 2020, it became known publicly known that the court had issued two separate rulings in the Don Lee Lawsuit; (1) Don Lee's request to file a third amended complaint naming Beyond Meat's Chief Financial Officer and Treasurer ("CFO"), along with certain other individuals as defendants with respect to Don Lee's fraud claims was granted, and (2) Don Lee's request to attach certain documentary evidence and property belonging to Beyond Meat was allowed. These rulings showed "probable validity" of Don Lee's claims, in contrast to Beyond Meat's public statements.

10.     Following this revelation, the price of Beyond Meat's shares dropped from $124.75 per share at the close of trading on January 27, 2020 to $120.12 at the close of trading on January 28, 2020, a drop of approximately 3.71%.

11.     During the Relevant Period, the Individual Defendants breached their fiduciary duties by causing Beyond Meat to make a series of materially false and misleading statements about Beyond Meat's business, operations, and compliance, including failing to disclose that: (1)

Beyond Meat's termination of the Don Lee Agreement had constituted a breach of the agreement, and would foreseeably expose the Company to legal liability, costs, and damage to the Company's reputation; (2) Beyond Meat falsely represented the accuracy of a food safety consultant's report provided to Don Lee, which certain Company employees had changed to exclude, among other things, pertinent safety information; and (3) the Company has not maintained proper internal controls.

12.     During the Relevant Period, the Individual Defendants caused Beyond Meat to fail to correct these false and misleading statements and omissions of material fact.

13.     Not only did the Individual Defendants fail to correct these statements, but certain Individual Defendants personally benefited from not doing so in a timely fashion, selling huge amounts of the Company's stock before the fraud became publicly known and the stock price dropped. Specifically, the Insider Sales Defendants (defined below) breached their fiduciary duties by executing insider sales, making approximately $62.3 million from those sales.

14.     Given the breaches of fiduciary duty by the Individual Defendants, most of whom are Beyond Meat's current directors, their collective engagement in fraud, and their extensive business and personal relationships with each other, these defendants cannot be considered to be disinterested and/or independent directors. Therefore, demand would be futile against a majority of the Board as they cannot commence litigation against themselves on behalf of Beyond Meat with any level of disinterestedness.

15.     As detailed herein, and in the federal securities class action in the Central District of California styled *Tran v. Beyond Meat, Inc. et al.*, Case No. 2:20-cv-00963, (the "Federal Securities Class Action"), the officers and directors substantially damaged Beyond Meat by filing false and misleading statements that omitted material adverse facts.

**JURISDICTION AND VENUE**

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act, 15 U.S.C. §78n(a)(1), Rule 14a-9 of the Exchange Act, 17 C.F.R. § 240.14a-9, and Section 20(a) of the Exchange Act (15 U.S.C. §§ 78t(a) and 78t-1), and raise a federal question pertaining to the claims made in the Securities Class Actions based on violations of the Exchange Act.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

17.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have such jurisdiction.

18.     This Court has personal jurisdiction over each of the Defendants due to each Defendant either being a corporation incorporated in this District, or he or she is an individual who has minimum contacts with this District to justify the exercise of jurisdiction over them.

19.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this District by engaging in various activities that had an effect in this District. Venue is proper in this District because the Company and the Individual Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

**THE PARTIES**

**Plaintiff**

20.     Plaintiff James Janolek is and has continuously been a stockholder of Beyond Meat during the wrongdoing complained of herein.

- 6 -

**Nominal Defendant**

21.     Defendant Beyond Meat, Inc., is a Delaware corporation with its principal executive offices located at 119 Standard Street, El Segundo, California 90245. Beyond Meat's shares trade on NASDAQ under the ticker symbol "BYND."

**Individual Defendants**

22.     Defendant Ethan Brown ("Brown") is the founder of Beyond Meat and has been the Company's President and Chief Executive Officer ("CEO") since 2009. During the Relevant Period, Brown sold 45,000 shares of Company stock on August 5, 2019 generating proceeds of $7,200,000.

23.     Defendant Mark J. Nelson ("Nelson") has been Beyond Meat's Chief Financial Officer ("CFO") since May 2017. During the Relevant Period, and before the investing public became aware of the fraud, Nelson sold 134,452 Beyond Meat shares on inside information, for which he received approximately $16 million.

24.     Defendant Seth Goldman ("Goldman") has been a director of Beyond Meat since February 2013 and is Chairman of the Board.

25.     Defendant Kathy N. Waller ("Waller") has been a director since November 2018 and is the Chair of the Company's Audit Committee.

26.     Defendant Donald Thompson ("Thompson") has been Company director since October 2015 and serves as the Chair of the Company's Compensation Committee.

27.     Defendant Christopher Isaac "Biz" Stone ("Stone") has been a Company director since January 2012. During the Relevant Period, before the fraud was exposed, Stone sold 120,000 Beyond Meat shares, for which he received approximately $9.86 million.

28.     Defendant Bernhard van Lengerich ("van Lengerich") has been a Beyond Meat

director since November 2016. During the Relevant Period, before the fraud was revealed, on November 5, 2019 van Lengerich sold 133,147 of Beyond Meat stock and made $11,005,664.

29.     Defendant Diane Carhart ("Carhart") has been a Beyond Meat director since January 2016 and serves as a member of the Audit Committee. During the Relevant Period, before the fraud was exposed, Carhart sold 71,569 Beyond Meat shares on inside information, for which she received approximately $6.7 million.

30.     Defendant Ned Segal ("Segal") has been as a Beyond Meat director since November 2018 and serves as a member of the Audit Committee.

31.     Defendant Gregory Bohlen ("Bohlen") served as a Beyond Meat director from February 2013 until he stood down on October 23, 2019. During the Relevant Period, on August 5, 2019 Bohlen sold 72,332 shares of the Company's common stock, making proceeds of $11,573,120.

32.     Defendant Raymond J. Lane ("Lane") has served as a Beyond Meat director since February 2015.

33.     The sales of the Company's common stock by Brown, Nelson, Stone, van Lengerich, Carhart and Bohlen ("the Insider Sales Defendants") as referenced above  are collectively referred to as "the insider sales". The insider sales by each of the Insider Sales Defendants were made with knowledge of material non-public information, showing motive in being involved in this scheme.

34.     Defendants Brown, Goldman, Carhart, Lane, van Lengerich, Segal, Stone, Thompson, and Waller above are herein referred to as the "Director Defendants."

35.     Nominal Defendant, together with Defendants Brown and Nelson were also named as defendants in the Federal Securities Class Action.

36.     Defendants Carhart, Segal, and Waller are referred to herein as the "Audit Committee Defendants".

37.     All defendants, except for Nominal Defendant Beyond Meat, are collectively referred to herein as the "Individual Defendants."

38.     The Individual Defendants, because of their positions with Beyond Meat, possessed the power and authority to control the contents of Beyond Meat's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance, and each had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and/or misleading.

## SUBSTANTIVE ALLEGATIONS

### Background

39.     Beyond Meat's most successful product is the Beyond Burger, a well-known vegan burger sold in the U.S., Canada, and several other countries. In the past, Beyond Meat utilized co-manufacturers to process and package the Company's products (including the Beyond Burger) which Beyond Meat then distributes and markets.

40.     In 2014, Beyond Meat entered into the Don Lee Agreement under which Don Lee would supply to Beyond Meat all of the Company's product offerings, including the Beyond Burger.

41.    The Don Lee Agreement existed approximately three years, until May 23, 2017, when Beyond Meat conveniently terminated the Don Lee Agreement just after the launch of the Beyond Burger, claiming that Don Lee had breached the Don Lee Agreement.

42.    Thereafter, Beyond Meat began sourcing its production to other manufacturers, including ProPortion.

43.    On May 25, 2017, Don Lee sued Beyond Meat, asserting claims against Beyond Meat for breach of contract, misappropriation of trade secrets, and unfair competition relating to Beyond Meat's termination of the Don Lee Agreement. The Don Lee Lawsuit is ongoing.

44.    Subsequently, Don Lee added ProPortion as a defendant and amended its filings to include claims of fraud and negligent misrepresentation. Specifically, Don Lee alleged that it had discovered contamination in raw materials from Beyond Meat.

45.    Don Lee also alleged that Beyond Meat had not only provided an edited version of a third-party safety consultant's report on the Company's facilities, but had also stated that the report constituted the full opinion of the safety consultant. This was purportedly done to coerce Don Lee to agree to expand the scope of the Don Lee Agreement.

46.    On May 2, 2019, with the Don Lee Lawsuit ongoing, Beyond Meat conducted its IPO, issuing 11,068,750 shares priced at $25.00 per share and raising over $240 million. After the IPO, the Company's stock began trading at $46 per share and skyrocketed to nearly $73 per share by the open of the following trading day.

47.    Subsequently, Beyond Meat made statements about the Don Lee Lawsuit in its filings with the SEC. However, these statements were limited to intentionally vague and generic disclaimers which were inaccurate given Individual Defendants' knowledge of the Company's conduct with respect to Don Lee and the Don Lee Agreement.

## The Individual Defendants' False and Misleading Statements

48.     On May 2, 2019, just following the IPO, Beyond Meat issued a registration statement and prospectus in connection with the IPO (the "Offering Documents"), which stated with respect to the Don Lee Lawsuit:

> [O]n May 25, 2017, following our termination of our supply agreement with Don Lee Farms, a co-manufacturer, Don Lee Farms filed a lawsuit against us in California state court claiming that we wrongfully terminated the parties' contract and that we misappropriated their trade secrets principally by sharing with subsequent co-manufacturers the processes for manufacturing our products—processes which they claim to have developed. On July 27, 2017 we filed a cross-complaint, alleging that Don Lee Farms (1) breached the Don Lee Agreement, including by failing to provide saleable product, as certain of our products manufactured by Don Lee Farms were contaminated with salmonella and other foreign objects, and that Don Lee Farms did not take appropriate actions to address these issues; (2) engaged in unfair competition in violation of California's Unfair Competition Law; and (3) unlawfully converted certain Beyond Meat property, including certain pieces of equipment. In October 2018, Don Lee Farms filed an amended complaint that added ProPortion Foods, LLC (one of Beyond Meat's current contract manufacturers) as a defendant, principally for claims arising from ProPortion's alleged use of Don Lee Farms' alleged trade secrets, and for replacing Don Lee Farms as Beyond Meat's co- manufacturer. ProPortion filed an answer denying all of Don Lee Farms' claims and a cross-complaint against Beyond Meat asserting claims of total and partial equitable indemnity, contribution, and repayment. On March 11, 2019, Don Lee Farms filed a second amended complaint to add claims of fraud and negligent misrepresentation against us. Trial is currently set for May 18, 2020.
>
> Don Lee Farms is seeking from us and ProPortion unspecified compensatory and punitive damages, declaratory and injunctive relief, including the prohibition of our use or disclosure of the alleged trade secrets, and attorneys' fees and costs. We are seeking from Don Lee Farms monetary damages, restitution of monies paid to Don Lee Farms, and attorneys' fees and costs. ProPortion is seeking indemnity, contribution, or repayment from us of any or all damages that ProPortion may be found liable to Don Lee Farms, and attorney's fees and costs. We believe we were justified in terminating the Don Lee Agreement with Don Lee Farms, that we did not misappropriate their alleged trade secrets, that we are not liable for the fraud or negligent misrepresentation alleged in the proposed second amended complaint, that Don Lee Farms is liable for the conduct alleged in our cross-complaint, and that we are not liable to ProPortion for any indemnity, contribution, or repayment, including for any damages or attorney's fees and costs.

We intend to vigorously defend ourselves against the claims and prosecute our own. However, we cannot assure you that Don Lee Farms or ProPortion will not prevail in all or some of their claims against us, or that we will prevail in some or all of our claims against Don Lee Farms. For example, if Don Lee Farms succeeds in the lawsuit, we could be required to pay damages, including but not limited to contract damages reasonably calculated at what we would have paid Don Lee Farms to produce our products through 2019, the end of the contract term, and Don Lee Farms could also claim some ownership in the intellectual property associated with the production of certain of our products or in the products themselves, and thus claim a stake in the value we have derived and will derive from the use of that intellectual property after we terminated our supply agreement with Don Lee Farms. As another example, we also could be required to pay attorney's fees and costs incurred by Don Lee Farms or ProPortion.

49.     By stating only that it "cannot assure" its investors as to the outcome of the Don Lee Lawsuit, that the Company "could be required to pay damages," and that Don Lee "could also claim some ownership in the intellectual property associated with the production of certain of our products or in the products themselves," the Company deliberately omitted known and material information about the risks associated with the suit. The Company withheld extensive details and documentation of its conduct with respect to the Don Lee Agreement and its collaboration with Don Lee, which were fundamental to its early growth as a business.

50.     On June 12, 2019, Beyond Meat filed a quarterly report on Form 10-Q with the SEC (the "Q1 2019 10-Q"). The Q1 2019 10-Q again gave few details regarding the Don Lee Lawsuit, merely summarizing the filings in those proceedings, but providing no specific underlying information or claims  upon which those filings were based, and which it knew at that, exposed the Company to significant liability:

On May 25, 2017, Don Lee Farms, a division of Goodman Food Products, Inc., filed a complaint against us in the Superior Court of the State of California for the County of Los Angeles asserting claims for breach of contract, misappropriation of trade secrets, unfair competition under the California Business and Professions Code, money owed and due, declaratory relief and injunctive relief, each arising out of our decision to terminate an exclusive supply agreement between us and Don Lee Farms. We deny all of these claims and filed counterclaims on July 27, 2017, alleging breach of contract, unfair competition under the California Business and Professions Code and conversion. In October 2018, Don Lee Farms filed an

amended complaint that added ProPortion Foods, LLC (one of Beyond Meat's current contract manufacturers) as a defendant, principally for claims arising from ProPortion's alleged use of Don Lee Farms' alleged trade secrets, and for replacing Don Lee Farms as Beyond Meat's co-manufacturer. ProPortion filed an answer denying all of Don Lee Farms' claims and a cross-complaint against Beyond Meat asserting claims of total and partial equitable indemnity, contribution, and repayment. On March 11, 2019, Don Lee Farms filed a second amended complaint to add claims of fraud and negligent misrepresentation against us. On May 30, 2019, the judge denied our motion to dismiss the fraud and negligent misrepresentation claims, allowing the claims to proceed. Trial is currently set for May 18, 2020.

Don Lee Farms is seeking from Beyond Meat and ProPortion unspecified compensatory and punitive damages, declaratory and injunctive relief, including the prohibition of Beyond Meat's use or disclosure of the alleged trade secrets, and attorneys' fees and costs. We are seeking from Don Lee Farms monetary damages, restitution of monies paid to Don Lee Farms, and attorney's fees and costs. ProPortion is seeking indemnity, contribution, or repayment from us of any or all damages that ProPortion may be found liable to Don Lee Farms, and attorney's fees and costs.

We believe we were justified in terminating the Don Lee Agreement with Don Lee Farms, that we did not misappropriate their alleged trade secrets, that we are not liable for the fraud or negligent misrepresentation alleged in the proposed second amended complaint, that Don Lee Farms is liable for the conduct alleged in our cross-complaint, and that we are not liable to ProPortion for any indemnity, contribution, or repayment, including for any damages or attorney's fees and costs. We are currently in the process of litigating this matter and intend to vigorously defend ourselves against the claims. We cannot assure you that Don Lee Farms or ProPortion will not prevail in all or some of their claims against us, or that we will prevail in some or all of our claims against Don Lee Farms. For example, if Don Lee Farms succeeds in the lawsuit, we could be required to pay damages, including but not limited to contract damages reasonably calculated at what we would have paid Don Lee Farms to produce our products through 2019, the end of the contract term, and Don Lee Farms could also claim some ownership in the intellectual property associated with the production of certain of our products or in the products themselves, and thus claim a stake in the value we have derived and will derive from the use of that intellectual property after we terminated our supply agreement with Don Lee Farms. Based on our current knowledge, we have determined that the amount of any material loss or range of any losses that is reasonably possible to result from this lawsuit is not estimable.

51.     The above Q1 2019 10-Q repeated generic disclaimers that failed to disclose

Beyond Meat's actual known risks. Attached as exhibits to the Q1 2019 10-Q were certifications

pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, affirming that

the Q1 2019 10-Q "fully complies with the requirements of Section 13(a) or Section 15(d), as applicable, of the Securities Exchange Act of 1934" and that "the information contained in the [Q1 2019 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company for the periods presented therein."

52.     On July 29, 2019, Beyond Meat filed its quarterly report on Form 10-Q with the SEC (the "Q2 2019 10-Q"). With respect to the Don Lee Lawsuit, the Q2 2019 10-Q merely repeated the statements in the Company's Offering Documents and in the Q1 2019 10-Q:

> On May 25, 2017, Don Lee Farms, a division of Goodman Food Products, Inc., filed a complaint against us in the Superior Court of the State of California for the County of Los Angeles asserting claims for breach of contract, misappropriation of trade secrets, unfair competition under the California Business and Professions Code, money owed and due, declaratory relief and injunctive relief, each arising out of our decision to terminate an exclusive supply agreement between us and Don Lee Farms. We deny all of these claims and filed counterclaims on July 27, 2017, alleging breach of contract, unfair competition under the California Business and Professions Code and conversion. In October 2018, Don Lee Farms filed an amended complaint that added ProPortion Foods, LLC (one of Beyond Meat's current contract manufacturers) as a defendant, principally for claims arising from ProPortion's alleged use of Don Lee Farms' alleged trade secrets, and for replacing Don Lee Farms as Beyond Meat's co-manufacturer. ProPortion filed an answer denying all of Don Lee Farms' claims and a cross-complaint against Beyond Meat asserting claims of total and partial equitable indemnity, contribution, and repayment. On March 11, 2019, Don Lee Farms filed a second amended complaint to add claims of fraud and negligent misrepresentation against us. On May 30, 2019, the judge denied our motion to dismiss the fraud and negligent misrepresentation claims, allowing the claims to proceed. On June 19, 2019, we filed an answer denying Don Lee Farms' claims. Trial is currently set for May 18, 2020.

> Don Lee Farms is seeking from Beyond Meat and ProPortion unspecified compensatory and punitive damages, declaratory and injunctive relief, including the prohibition of Beyond Meat's use or disclosure of the alleged trade secrets, and attorneys' fees and costs. We are seeking from Don Lee Farms monetary damages, restitution of monies paid to Don Lee Farms, and attorney's fees and costs. ProPortion is seeking indemnity, contribution, or repayment from us of any or all damages that ProPortion may be found liable to Don Lee Farms, and attorney's fees and costs.

> We believe we were justified in terminating the Don Lee Agreement with Don Lee Farms, that we did not misappropriate their alleged trade secrets, that we are not liable for the fraud or negligent misrepresentation alleged in the proposed second

amended complaint, that Don Lee Farms is liable for the conduct alleged in our cross-complaint, and that we are not liable to ProPortion for any indemnity, contribution, or repayment, including for any damages or attorney's fees and costs. We are currently in the process of litigating this matter and intend to vigorously defend ourselves against the claims. We cannot assure you that Don Lee Farms or ProPortion will not prevail in all or some of their claims against us, or that we will prevail in some or all of our claims against Don Lee Farms. For example, if Don Lee Farms succeeds in the lawsuit, we could be required to pay damages, including but not limited to contract damages reasonably calculated at what we would have paid Don Lee Farms to produce our products through 2019, the end of the contract term, and Don Lee Farms could also claim some ownership in the intellectual property associated with the production of certain of our products or in the products themselves, and thus claim a stake in the value we have derived and will derive from the use of that intellectual property after we terminated our supply agreement with Don Lee Farms. Based on our current knowledge, we have determined that the amount of any material loss or range of any losses that is reasonably possible to result from this lawsuit is not estimable.

53.     The Q2 2019 10-Q repeated the same generic disclaimers as the Q1 2019 10-Q and did not disclose Beyond Meat's actual known risks at that time.

54.     Attached as exhibits to the Q2 2019 10-Q were SOX certifications by the Individual Defendants, attesting that the Q2 2019 10-Q "fully complies with the requirements of Section 13(a) or Section 15(d), as applicable, of the Securities Exchange Act of 1934" and that "the information contained in the [Q2 2019 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company for the periods presented therein."

55.     On November 12, 2019, Beyond Meats filed its quarterly report on Form 10-Q with the SEC (the "Q3 2019 10-Q"). The Q3 2019 10-Q stated, with respect to the Don Lee Lawsuit:

On May 25, 2017, Don Lee Farms, a division of Goodman Food Products, Inc., filed a complaint against us in the Superior Court of the State of California for the County of Los Angeles asserting claims for breach of contract, misappropriation of trade secrets, unfair competition under the California Business and Professions Code, money owed and due, declaratory relief and injunctive relief, each arising out of our decision to terminate an exclusive supply agreement between us and Don Lee Farms. We deny all of these claims and filed counterclaims on July 27, 2017, alleging breach of contract, unfair competition under the California Business and Professions Code and conversion. In October 2018, Don Lee Farms filed an amended complaint that added ProPortion Foods, LLC (one of Beyond Meat's current contract manufacturers) as a defendant, principally for claims arising from

ProPortion's alleged use of Don Lee Farms' alleged trade secrets, and for replacing Don Lee Farms as Beyond Meat's co-manufacturer. ProPortion filed an answer denying all of Don Lee Farms' claims and a cross-complaint against Beyond Meat asserting claims of total and partial equitable indemnity, contribution, and repayment. On March 11, 2019, Don Lee Farms filed a second amended complaint to add claims of fraud and negligent misrepresentation against us. On May 30, 2019, the judge denied our motion to dismiss the fraud and negligent misrepresentation claims, allowing the claims to proceed. On June 19, 2019, we filed an answer denying Don Lee Farms' claims. Trial is currently set for May 18, 2020.

Don Lee Farms is seeking from Beyond Meat and ProPortion unspecified compensatory and punitive damages, declaratory and injunctive relief, including the prohibition of Beyond Meat's use or disclosure of the alleged trade secrets, and attorneys' fees and costs. We are seeking from Don Lee Farms monetary damages, restitution of monies paid to Don Lee Farms, and attorney's fees and costs. ProPortion is seeking indemnity, contribution, or repayment from us of any or all damages that ProPortion may be found liable to Don Lee Farms, and attorney's fees and costs.

We believe we were justified in terminating the Don Lee Agreement with Don Lee Farms, that we did not misappropriate their alleged trade secrets, that we are not liable for the fraud or negligent misrepresentation alleged in the proposed second amended complaint, that Don Lee Farms is liable for the conduct alleged in our cross-complaint, and that we are not liable to ProPortion for any indemnity, contribution, or repayment, including for any damages or attorney's fees and costs. We are currently in the process of litigating this matter and intend to vigorously defend ourselves against the claims. We cannot assure you that Don Lee Farms or ProPortion will not prevail in all or some of their claims against us, or that we will prevail in some or all of our claims against Don Lee Farms. For example, if Don Lee Farms succeeds in the lawsuit, we could be required to pay damages, including but not limited to contract damages reasonably calculated at what we would have paid Don Lee Farms to produce our products through 2019, the end of the contract term, and Don Lee Farms could also claim some ownership in the intellectual property associated with the production of certain of our products or in the products themselves, and thus claim a stake in the value we have derived and will derive from the use of that intellectual property after we terminated our supply agreement with Don Lee Farms. Based on our current knowledge, we have determined that the amount of any material loss or range of any losses that is reasonably possible to result from this lawsuit is not estimable.

56.     Much like prior filings, the Q3 2019 10-Q made disclaimers that did not properly disclose Beyond Meat's actual known risks with respect to the Don Lee Lawsuit.

57.     Attached as exhibits to the Q3 2019 10-Q were SOX certifications by the Individual

Defendants, attesting that the Q3 2019 10-Q "fully complies with the requirements of Section 13(a) or Section 15(d), as applicable, of the Securities Exchange Act of 1934" and that "the information contained in the [Q3 2019 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company for the periods presented therein."

58.     The statements in the SEC filings referenced above were materially false and misleading because Individual Defendants made false and/or misleading statements and failed to disclose material adverse facts about the Company's business and operational and compliance policies. Specifically, Individual Defendants made false and/or misleading statements and/or failed to disclose that: (i) Beyond Meat's termination of its supply agreement with Don Lee constituted a breach of that agreement, thus exposing the Company to foreseeable legal liability and reputational harm; (ii) Beyond Meat and certain of its employees had changed the contents of, and omitted material information from, a food safety consultant's report, which the Company represented as accurate to Don Lee; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

59.     On January 27, 2020, Don Lee published an article entitled "Judge Rules Don Lee Farms Likely to Obtain a Judgment. Beyond Meat's CFO and Others Named Individually for Fraud." The article stated, that "[a] judge has ruled Don Lee Farms proved the probable validity of its claim that Beyond Meat breached its manufacturing agreement with Don Lee Farms" and that "[i]n a separate motion before a different Judge, the Court granted Don Lee Farms' request to name Beyond Meat Chief Financial Officer Mark Nelson, Senior Quality Assurance Manager Jessica Quetsch and Director of Operations Anthony Miller in its fraud claims which allege they intentionally changed its contents and omitted material information from a food safety consultant's

report, and then delivered that changed its contents report to Don Lee Farms and affirmatively represented that it was the complete opinion of the consultant."

60.     Following the publication of this information, Beyond Meat's stock price fell $4.63 per share, or 3.71%, to close at $120.12 per share on January 28, 2020.

61.     As a result of the Individual Defendants material omission of information related to the Don Lee Lawsuit, investors who relied upon the Company's public statements have suffered damages, as they were not fully informed as to the serious threat which the lawsuit posed.

**The False and Misleading Proxy**

62.     In 2020 the Company filed a Schedule 14a with the SEC, which contained a Notice of Shareholder Meeting (by order of the Board) and Proxy Statement (the "Proxy").

63.     First, the Proxy stated that:

> We have adopted a written code of business conduct and ethics that applies to our directors, officers and employees, including our principal executive officer, principal financial officer, principal accounting officer or controller, or persons performing similar functions, contractors and consultants. Our code of business conduct and ethics is available under the "Investors" section of our website at https://investors.beyondmeat.com. We intend to disclose future amendments to such code, or any waivers of its requirements, applicable to any principal executive officer, principal financial officer, principal accounting officer or controller or persons performing similar functions, or our directors on the same website. We will also provide a copy of our code of business conduct and ethics, free of charge, to any stockholder upon written request to Beyond Meat, Inc., 119 Standard Street, El Segundo, California 90245.

Notably, the Proxy states that the Code is available on request as opposed to being printed in the Proxy.

64.     Second, the Proxy states "Our board of directors has an audit committee…which has the composition and the responsibilities described below. Copies of the charters for each standing committee are available under the "Investors" section of our website at https://investors.beyondmeat.com. Members will serve on these committees until their resignation

or until as otherwise determined by our board of directors.

65.    Third, the Proxy refers to the "Report of the Audit Committee."  In it, the Company states:

> the audit committee has reviewed and discussed the company's audited financial statements for the year ended December 31, 2019 with management… based on the foregoing, the audit committee has recommended to our board of directors that such audited financial statements be included in the 2019 Form 10-K for filing with the SEC.

66.    The Proxy was false and misleading because, while it assures investors that its code of business conduct and ethics and its audit committee charter were followed during the preceding fiscal year, the omissions and non-disclosures during the Relevant Period, as outlined below, show that the Board and upper management did not comply with the stated provisions of those documents when it filed public statements regarding the affairs of the Company with the SEC.

## FIDUCIARY DUTIES

67.    By reason of their positions as officers and directors of the Company, each of the Individual Defendants owed and continues to owe Beyond Meat and its stockholders fiduciary obligations of trust, loyalty, good faith, and due care, and was/is required to use his/her utmost ability to control and manage Beyond Meat in a fair, just, honest, and equitable manner. The Individual Defendants were/are required to act in furtherance of the best interests of Beyond Meat and its stockholders to benefit all stockholders equally and not in furtherance of their personal interest or benefit.

68.    Each Individual Defendant owes and continues to owe Beyond Meat, and its stockholders, the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets.

69.    The Individual Defendants, because of their positions of control and authority as

directors and/or officers of Beyond Meat, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their executive and/or directorial positions with Beyond Meat, each of the Individual Defendants had knowledge of material, nonpublic information regarding the Company. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's business practices, operations, financials, financial prospects, compliance policies, and internal controls so that the market price of the Company's stock would be based on truthful and accurate information.

70.     To discharge their duties, the Individual Defendants were/are required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company. The Individual Defendants were required to, among other things:

(a)     ensure that the Company complied with its legal obligations and requirements—including requirements involving the filing of accurate financial and operational information with the SEC—and refrain from engaging in insider trading and other deceptive conduct;

(b)     conduct the affairs of the Company in compliance with all applicable laws, rules, and regulations to make it possible to provide the highest quality performance of its business, avoid wasting the Company's assets, and maximize the value of the Company's stock;

(c)     remain informed as to how Beyond Meat conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make a reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws; and

(d)     truthfully and accurately guide investors and analysts as to the business operations of the Company at any given time.

### Duties Pursuant to the Company's Code of Business Conduct and Ethics

71.     The Individual Defendants, as officers and/or directors of Beyond Meat, were

bound by the Company's Code of Business Conduct and Ethics[1] (the "Code of Conduct") which

required the following:

> The Audit Committee is responsible for reviewing this Code as set forth in the Audit Committee's charter and overseeing the establishment of procedures for the prompt internal reporting of violations of this Code. It may request reports from the Company's executive officers about the implementation of this Code and may take any steps in connection with the implementation of this Code as it deems necessary, subject to the limitations set forth in this Code. The Audit Committee will have the authority to review and assess this Code and recommend revisions for approval by the Board. The Company will notify directors of any material changes to this Code.

**FINANCIAL INTEGRITY; PUBLIC REPORTING**

> The Company strives to maintain integrity of the Company's records and public disclosure. **The Company's corporate and business records, including all supporting entries to the Company's books of account, must be completed honestly, accurately and understandably.** The Company's records are important to investors and creditors. They serve as a basis for managing the Company's business and are important in meeting the Company's obligations to business partners, suppliers, vendors, creditors, employees and others with whom the Company does business. **The Company depends on the books, records and accounts accurately and fairly reflecting, in reasonable detail, the Company's assets, liabilities, revenues, costs and expenses, as well as all transactions and changes in assets and liabilities.**

> To help ensure the integrity of the Company's records and public disclosure, **the Company requires that: no entry be made in the Company's books and records that is intentionally false or misleading; transactions be supported by appropriate documentation; the terms of sales and other commercial transactions be reflected accurately in the documentation for those transactions and all such documentation be reflected accurately in the Company's books and records**; employees comply with the Company's system of internal controls and be held accountable for their entries; any off-balance sheet arrangements of the Company are clearly and appropriately disclosed; employees work cooperatively with the Company's independent auditors in their review of the Company's financial statements and disclosure documents; no cash or other assets be maintained for any purpose in any unrecorded or "off-the books" fund; and -records be retained or destroyed according to the Company's document retention policies or procedures then in effect.

---

[1] See Beyond Meat Code of Business Conduct and Ethics:
https://investors.beyondmeat.com/static-files/a2ccf016-e3da-4199-a7d2-d43bdd98f2eb

The Company's disclosure controls and procedures are designed to help ensure that the Company's reports and documents filed with or submitted to the U.S. Securities and Exchange Commission (the "SEC") and other public disclosures **are complete, fair, accurate, fairly present the Company's financial condition and results of operations and are timely and understandable.** Employees who collect, provide or analyze information for or otherwise contribute in any way in preparing or verifying these reports should be familiar with and adhere to all disclosure controls and procedures and generally assist the Company in producing financial disclosures that contain all of the information about the Company that is required by law and would be important to enable investors to understand the Company's business and its attendant risks. These controls and procedures include, but are not limited to, the following: no employee may take or authorize any action that would cause the Company's financial records or financial disclosure to fail to comply with generally accepted accounting principles, the rules and regulations of the SEC or other applicable laws, rules and regulations; all employees must cooperate fully with the Company's finance department, as well as the Company's independent auditors and legal counsel, respond to their questions with candor and provide them with complete and accurate information to help ensure that the Company's books and records, as well as its reports filed with the SEC, are accurate and complete; and -no employee should knowingly make (or cause or encourage any other person to make) any false or misleading statement in any of the Company's reports filed with the SEC or knowingly omit (or cause or encourage any other person to omit) any information necessary to make the disclosure in any of such reports accurate in all material respects.

In connection with the preparation of the financial and other disclosures that the Company makes to the public, including by press release or filing a document with the SEC, directors must, in addition to complying with all applicable laws, rules and regulations, follow these guidelines: act honestly, ethically, and with integrity; comply with this Code; **endeavor to ensure complete, fair, accurate, timely and understandable disclosure in the Company's filings with the SEC**; raise questions and concerns regarding the Company's public disclosures when necessary and ensure that such questions and concerns are appropriately addressed; act in good faith in accordance with the director's business judgment, without misrepresenting material facts or allowing independent judgment to be subordinated by others; and comply with the Company's disclosure controls and procedures and internal controls over financial reporting.

If an employee becomes aware that the Company's public disclosures are not complete, fair and accurate, or if an employee becomes aware of a transaction or development that the employee believes may require disclosure, the employee should report the matter immediately.

72.     In addition to these duties, the Audit Committee Defendants owed specific duties

to Beyond Meat under the Audit Committee Charter (the "Audit Charter").[2] Specifically the Audit

Charter provided for the following responsibilities of the Audit Committee Defendants to:

> (A) assist the Board in overseeing (1) the integrity of the Company's financial statements, (2) the Company's compliance with legal and regulatory requirements, (3) the independent auditor's qualifications and independence, and (4) the performance of the Company's internal audit function and independent auditors; (B) provide such reports as may be required of an audit committee under the rules and regulations promulgated under the Securities Exchange Act of 1934, as amended (the "Exchange Act"); and (C) provide oversight with respect to ethical conduct and any related matters. The Committee is not responsible, however, for planning or conducting audits, or determining whether the Company's financial statements are complete and accurate or in accordance with generally accepted accounting principles ("GAAP").
>
> ***
>
> On behalf of the Board, oversee the principal risk exposures facing the Company and the Company's mitigation efforts in respect of such risks, including, but not limited to financial reporting risks and credit and liquidity risks.
>
> ***
>
> Meet with management and the independent auditor to discuss the annual financial statements, including Management's Discussion and Analysis of Financial Condition and Results of Operations contained therein, and the report of the independent auditor with respect to such annual financial statements and to discuss significant issues encountered in the course of the audit work, including: restrictions on the scope of activities; access to required information; the adequacy of internal controls, including any special steps adopted in light of any significant deficiencies or material weaknesses in the design or operation of internal control over financial reporting identified during the course of the annual audit, and **the adequacy of disclosures about changes in internal control over financial reporting; the adequacy of the disclosure of off-balance sheet transactions, arrangements, obligations and relationships in reports filed with the Securities and Exchange Commission (the "SEC")**; and the appropriateness of the presentation of any non-GAAP financial measures (as defined in the Regulations) included in any report filed with the SEC or in any public disclosure or release Periodically receive reports from management regarding, and review and discuss the adequacy and

---

[2] See  Beyond Meat Audit Charter at:
https://investors.beyondmeat.com/static-files/c82349ac-189c-40c8-8a42-a45253d61360

effectiveness of, the Company's disclosure controls and procedures.

\*\*\*

Review, prior to public release, the substance and presentation of financial information (including any guidance) in the Company's annual and quarterly earnings releases.

\*\*\*

Discuss with management and the independent auditor the quarterly financial statements prior to the filing of the Form 10-Q, including Management's Discussion and Analysis of Financial Condition and Results of Operations contained therein; provided that this responsibility may be delegated to the chairman of the Committee or a member of the Committee who is a financial expert.

\*\*\*

Periodically conduct separate executive sessions with management and the independent auditor to discuss **matters that any of them or the Committee believes could significantly affect the financial statements** and should be discussed privately; and review with the independent auditor any audit problems or difficulties and management's response, including any restrictions on the scope of the independent auditor's activities or access to requested information, or any significant disagreements with management.

## **BREACHES OF DUTIES**

73.     The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and/or directors of Beyond Meat, the absence of good faith on their part, and a reckless disregard for their duties to the Company.

74.     The Individual Defendants breached their duty of loyalty and good faith by utterly failing to implement a reasonable, relevant, meaningful, and well-constituted system of internal controls, especially with respect to disclosure of material information regarding ongoing lawsuits against the Company. The Individual Defendants also breached their duty of loyalty and good faith by allowing the Company to cause, or by themselves causing, the Company to make improper statements to the public and the Company's stockholders. These unlawful practices wasted the

Company's assets and caused Beyond Meat to incur substantial damage.

75.     The Audit Committee Defendants had a duty to review the Company's earnings press releases and regulatory filings. The members of the Audit Committee breached their duty of loyalty and good faith by approving the omission of material information, making the improper statements detailed herein, and failing to properly oversee Beyond Meat's public statements and internal control function.

76.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of Beyond Meat, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein. The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions. In addition, as a result of Individual Defendants' improper course of conduct, the Company is now the subject of the Federal Securities Class Action, which alleges violations of federal securities laws. As a result, Beyond Meat has expended, and will continue to expend, significant sums of money.

## DAMAGES TO BEYOND MEAT

77.     The improper accounting practices have exposed the Company to myriad reputation and financial damages, including but not limited to:

      (a)     Possible restatements and goodwill impairments;

      (b)     Liability arising from the Securities Class Action;

      (c)     The loss of credibility with customers and suppliers; and

      (d)     Legal and accounting costs associated with litigation, investigations and restatements.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

78.     Plaintiff brings this action derivatively and for the benefit of Beyond Meat to redress injuries suffered, and to be suffered, because of the Individual Defendants' breaches of

their fiduciary duties as directors and/or officers of Beyond Meat, waste of corporate assets, unjust enrichment, and violations of Sections 14(a) and 20(a) of the Exchange Act, as well as the aiding and abetting thereof.

79.     Beyond Meat is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

80.     Plaintiff is, and has been continuously at all relevant times, a stockholder of Beyond Meat. Plaintiff will adequately and fairly represent the interests of Beyond Meat in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

81.     Plaintiff incorporates by reference and re-alleges each allegation stated above as if fully set forth herein.

82.     During the Relevant Period, the Board consisted of the Director Defendants. Because of the facts below, demand on the Board to institute this action is not necessary because such a demand would have been a futile and useless act.

83.     The Beyond Meat Board is currently comprised of Defendants Brown, Goldman, Carhart, Lane, van Lengerich, Segal, Stone, Thompson, and Waller (collectively, the "Director Defendants"). Therefore, Plaintiff is required to allege demand futility as to five of the nine Directors who are on the Board at the time this action is commenced and cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

84.     The Director Defendants face a substantial likelihood of liability in this action because they caused the Company to issue false and misleading statements concerning its future prospects. Due to their positions with the Company, each of these Director Defendants had

knowledge of material non-public information regarding the Company and was directly involved in the operations of the Company at the highest levels.

85.     The Director Defendants either knew or should have known of the materially false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

86.     A majority of, if not all the Director Defendants cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

87.     Because of their participation in the gross dereliction of fiduciary duties and the breaches of the duties of due care, good faith, and loyalty, the Director Defendants are unable to comply with their fiduciary duties in the prosecution of this action.

88.     Additionally, each of the Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

89.     Further, demand is excused as to all of the Director Defendants because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to make and/or cause Beyond Meat to make false and misleading statements and omissions of material facts, while six engaged in insider sales based on material non-public information, during the Relevant Period, rendering them unable to impartially investigate the charges and decide whether to pursue action against themselves and the rest of the Individual Defendants.

90.     In abdication of their fiduciary duties, the Directors either knowingly or recklessly participated in making and/or causing Beyond Meat to make the false and misleading statements

of material fact alleged in this complaint, specifically material information pertaining to ongoing litigation.

91.     The fraudulent scheme was, inter alia, intended to make Beyond Meat appear more attractive to investors, specifically by downplaying the materiality of an ongoing lawsuit, by way of omitting known details. Consequently, the Directors breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and therefore excused.

92.     Brown acknowledges he is a non-independent director. Beyond Meat provides Defendant Brown with his principal occupation, and livelihood by way of providing him with his main income source. Brown was ultimately responsible for the false and misleading statements and omissions that were made, including those contained in the IPO and SPO Materials, which he signed, and in the 1Q19 10-Q, 2Q19 10-Q, and 3Q19 10-Q, for which he signed SOX certifications. As the CEO, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements and omissions and consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme and to protect corporate assets. Brown terminated the Don Lee Agreement and knew the consequences of such termination prior to the IPO. His insider sales during the Relevant Period, demonstrate his motive in facilitating and participating in the fraud. He is also a defendant in the Class Action.

93.     Goldman is chairman of the Board. Goldman receives his main source of livelihood from Beyond Meat. Goldman was on Beyond Meat's Board at the time the Company terminated the Don Lee Agreement and was well aware of the risks of the ongoing litigation, and the need to disclose these risks, with appropriate detail to investors. Goldman signed the IPO and SPO Materials and thus affirmed the false and misleading statements and omissions himself.

94.     Segal receives compensation for his role as a director. Segal signed the IPO and SPO Materials and therefore directly and personally affirmed the false and misleading statements and omissions made therein.

95.     Van Lengerich receives compensation for his role as a director. Van Lengerich was on the Board at the time Beyond Meat terminated the Don Lee Agreement and knew, prior to the IPO, that such termination would expose the Company to liability. Van Lengerich signed the IPO and SPO Materials and, therefore, personally made the false and misleading statements and omissions that were made therein. His insider sale before the fraud was exposed shows his motive in facilitating and participating in the fraud.

96.     Waller receives compensation for her role as a director as described in this complaint. Waller signed the IPO and SPO Materials and therefore affirmed the false and misleading statements and omissions outlined therein.

97.     Thompson was on the Board at the time Beyond Meat terminated the Don Lee Agreement and, therefore, was aware prior to the IPO that such termination would expose Beyond Meat to liability. Thompson also signed the IPO and SPO Materials and, therefore, personally affirmed the false and misleading statements and omissions that were made therein.

98.     Lane was on the its Board at the time Beyond Meat terminated the Don Lee Agreement and, thus, was aware prior to the IPO that such termination would expose the Company to liability. Defendant Lane also signed the IPO and SPO Materials and, therefore, personally affirmed the false and misleading statements and omissions that were made therein.

99.     Stone was on the Board at the time Beyond Meat terminated the Don Lee Agreement and, therefore, was aware prior to the IPO that such termination would expose the Company to liability. Stone also signed the IPO and SPO Materials and, therefore, personally made

verified the false and misleading statements and omissions that were made therein. His insider sales demonstrate his motive in allowing the fraud to occur. Stone is the co-founder of Twitter, Inc. where Segal also serves a leadership position and, therefore, are beholden to each other.

100.   Carhart was on the Board at the time Beyond Meat terminated the Don Lee Agreement and, thus, was aware prior to the IPO that such termination would expose the Company to liability. Carhart also signed the IPO and SPO Materials and, therefore, personally made the false and misleading statements and omissions that were made therein. Her insider sales before the fraud became known to the public demonstrate her motive in allowing the fraud to occur.

101.   The insider sale defendants sold huge amounts of the Company's stock during the Relevant Period in violation of federal law with a total value of $34.7 million as a result of these insider sales. Therefore, demand in this case is futile as to them and, thus, excused.

102.   The Audit Committee Defendants served during the Relevant Period and were responsible for overseeing the integrity of Beyond Meat's financial statements, compliance with legal and regulatory requirements, and matters implicating ethical concerns. Notwithstanding their obligations under the code of conduct, the audit committee charter, and various laws, the Audit Committee Defendants failed to ensure financial statements and internal controls complied with requirements and did not omit material information. Therefore, the Audit Committee Defendants breached their fiduciary duties, are not disinterested, and demand is futile against them.

103.   As a majority of the Directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and are not capable of exercising independent and disinterested judgment in order to pursue claims for the benefit of the Company and its shareholders. Therefore, demand is excused as being futile.

**Insurance Considerations**

104.    The Directors may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of Beyond Meat. If there is a directors and officers' liability insurance policy covering the Relevant Period, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Director Defendants, known as, inter alia, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain officers of Beyond Meat, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

105.    If there is no directors' and officers' liability insurance, then the Director Defendants will not cause Beyond Meat to sue any other wrongdoers, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well.

106.    Thus, for all the reasons set forth above, all of the Director Defendants, and, if not all of them, at least a majority of Directors, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

**FIRST CLAIM**

**Against the Individual Defendants**
*for Violations of Section 14(a) of the Exchange Act*

107.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

108.     The Section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants. The Section 14(a) claims alleged herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to these nonfraud claims.

109.     Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

110.     Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

111.     The Proxy also stated that the Company's directors and employees, including its principal executive officer, principal financial officer, principal accounting officer, and controller, or persons performing similar functions, are subject to the Company's Code of Conduct.  The Proxy was also false and misleading because, despite assertions to the contrary, Beyond Meat's compliance with its respective codes of conduct were not followed, as the Individual Defendants

made and/or caused the Company to make the false and misleading statements discussed herein.

112.    In the exercise of reasonable care, the Individual Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2020 Proxy Statement was materially false and misleading. The misrepresentations and omissions were material to Plaintiff in voting on the matters set forth for stockholder determination in the 2020 Proxy Statement, including, but not limited to, election of directors, ratification of an independent auditor, and the approval of executive compensation.

113.    The false and misleading elements of the annual Proxy led to the re-elections of all of the Director Defendants which allowed them to continue breaching their fiduciary duties to Beyond Meat.

114.    The Company was damaged as a result of the Individual Defendants' material misrepresentations and omissions in the Proxies

115.    Plaintiff on behalf of Beyond Meat has no adequate remedy at law.

## SECOND CLAIM

### Against the Individual Defendants
*for Violations of Section 20(a) of the Exchange Act*

116.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

117.    The Individual Defendants, by virtue of their positions with Beyond Meat and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of Beyond Meat and officers and directors who made the false and misleading statements alleged herein within the meaning of § 20(a) of the Exchange Act. The Individual Defendants had the power and influence, and exercised same, to cause Beyond Meat to engage in the illegal conduct and practices complained of herein.

118.    Plaintiff on behalf of Beyond Meat has no adequate remedy at law.

### THIRD CLAIM

**Against Individual Defendants**
*for Breach of Fiduciary Duties*

119.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

120.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Beyond Meat's business and affairs.

121.    Each of the Individual Defendants violated and breached their fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

122.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Beyond Meat.

123.    In breach of their fiduciary duties, the Individual Defendants caused the Company to engage in the misconduct described herein.

124.    In further breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure, controls, and procedures.

125.    Also in breach of their fiduciary duties, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements that failed to disclose: that: (1) Beyond Meat's termination of the Don Lee Agreement had constituted a breach of the agreement and would foreseeably expose the Company to legal liability, costs, and damage to the Company's reputation; (2) Beyond Meat falsely represented the accuracy of a food safety consultant's report provided to Don Lee, which certain Company employees had changed

its contents to, among other things, exclude pertinent safety information; and (3) the Company did not maintain proper internal controls.

126.    The Individual Defendants failed to correct and/or caused the Company to fail to rectify any of the wrongs described herein or correct the false and/or misleading statements and omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

127.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.

128.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent schemes set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent schemes and fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities and engaging in insider sales. The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

129.    These actions were not a good-faith exercise of prudent business judgment to

protect and promote the Company's corporate interests.

130.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Beyond Meat has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

131.    Plaintiff on behalf of Beyond Meat has no adequate remedy at law.

## FOURTH CLAIM

### Against Individual Defendants
*for Unjust Enrichment*

132.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

133.    By their wrongful acts, violations of law, false and misleading statements, and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Beyond Meat.

134.    The Individual Defendants either benefitted financially from the improper conduct, received unjust compensation tied to the false and misleading statements, received bonuses, stock options, or similar compensation from Beyond Meat tied to the performance or artificially inflated valuation of Beyond Meat, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

135.    Plaintiff, as a stockholder and a representative of Beyond Meat, seeks restitution from the Director Defendants and seeks an order from this Court disgorging all profits— including benefits, performance-based, valuation-based, and other compensation—obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties.

136.    Plaintiff on behalf of Beyond Meat has no adequate remedy at law.

## FIFTH CLAIM

### Against Individual Defendants
*for Waste of Corporate Assets*

137.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

138.    As a further result of the foregoing, the Company will incur many millions of dollars of legal liability and/or costs to defend unlawful actions, engage in internal investigations, and lose financing from investors and business from future customers who no longer trust the Company and its products.

139.    Because of the waste of corporate assets, the Individual Defendants are each liable to the Company.

140.    Plaintiff on behalf of Beyond Meat has no adequate remedy at law.

## PRAYER FOR RELIEF

**FOR THESE REASONS**, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

A.    Declaring that Plaintiff may maintain this action on behalf of Beyond Meat, and that Plaintiff is an adequate representative of the Company;

B.    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Beyond Meat;

C.    Determining and awarding to Beyond Meat the damages sustained by it because of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre- and post-judgment interest thereon;

D.    Directing Beyond Meat and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable

laws and protect Beyond Meat and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote the following resolutions for amendments to the Company's Bylaws or Articles of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1) A proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board; and

2) A proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations;

3) Awarding Beyond Meat restitution from Individual Defendants;

4) Awarding Plaintiff, the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

5) Granting such other and further relief as the Court may deem just and proper.

Dated: June 17, 2020

Of Counsel:

Gregory M. Nespole
**LEVI & KORSINSKY, LLP**
55 Broadway, 10th Floor
New York, NY 10006
T. 212.363.7500
F. 212.363.7171
gnespole@zlk.com

Respectfully submitted,

**FARNAN LLP**

/s/ Michael J. Farnan
Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff James Janolek*